IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

**Robert V. Kesling,**

   **Petitioner,**

v.                 Case No. 16-3034-JWL

**Claude Maye,**

   **Respondent.**

### MEMORANDUM & ORDER

  Robert V. Kesling, a federal prisoner appearing pro se, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241. In his petition, Mr. Kesling challenges his loss of good-time credits resulting from a prison disciplinary conviction. Specifically, he contends that his due process rights were violated because there was insufficient evidence to support the disciplinary conviction, the hearing officer did not review exculpatory video evidence, and he did not receive the incident report in a timely fashion.[1] Mr. Kesling seeks expungement of the incident from his record and restoration of his good time credits.

  The record reflects that, on June 18, 2014, prison officials at FCI Safford observed that inmates were not reporting to the dining facility for the noon meal. Each housing unit was given an additional opportunity to report to the dining hall but the majority of the inmate population

---

[1] An inmate has a liberty interest in earned good time credits and those credits may not be taken away without minimal due process required by the Fourteenth Amendment. *Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 811 (10th Cir. 2007). To the extent Mr. Kesling also asserts that prison officials violated his Eighth Amendment right to be free from cruel and unusual punishment by punishing him too severely for the disciplinary conviction, a habeas action under § 2241 is an improper vehicle for that challenge, *see Ricco v. Conner*, 146 Fed. Appx. 249, 251 (10th Cir. 2005), and that aspect of the claim is dismissed.

refused to report to the dining facility. Intelligence received from interviews and inmate email messages revealed that the inmates were engaging in a food strike over various issues in the facility. On June 19 and June 20, the inmates continued the food strike and refused all opportunities to come to the dining facility. On June 21, 2014, Mr. Kesling was identified through inmate interviews and staff observations as a leader in organizing and uniting the inmate population to participate in the food strike. On that same day, Lieutenant Chad Bailey personally observed Mr. Kesling refusing to leave his bunk to go to the dining hall. Lieutenant Bailey wrote his observation in a memorandum, in which he also indicated that other inmates in the housing unit got up to exit the building and proceed to the dining hall "but seemed to look toward inmate Kesling to see if he was going to go . . . [w]hen he did not get off this bunk the other inmates near him returned to their bunks." On June 22, 2014, a member of FCI Safford's Special Investigative Section staff wrote an incident report charging Mr. Kesling with "Engaging in or Encouraging a Group Demonstration" in violation of Code 212.[2] A discipline hearing officer (DHO) ultimately found that Mr. Kesling had committed the charge and, among other sanctions, disallowed 27 days of good conduct time. The DHO's findings indicate that the DHO believed, on balance, that Mr. Kesling engaged in the food strike and persuaded others to engage in the food strike through the use of fear and intimidation. The DHO rejected as unpersuasive Mr. Kesling's sole statement that he did, in fact, go to the dining hall but did not eat at the dining hall.

---

[2] The incident report also charged Mr. Kesling with Conduct which Disrupts or Interferes with the Security or Orderly Running of the Institution. The DHO did not consider this charge.

2

In his petition, Mr. Kesling maintains that Lieutenant Bailey's memorandum is demonstrably false and the DHO erred in relying on it; that video footage from security cameras in the dining hall would establish that Mr. Kesling was in the dining hall on June 21, 2014 such that the DHO erred in not reviewing that footage; and that he was not provided with notice of the incident report within 24 hours of the incident as required by BOP regulations.[3] The court begins with Mr. Kesling's argument about Lieutenant Bailey's memorandum. According to Mr. Kesling, Lieutenant Bailey wrote several memoranda about several inmates and, in each one, indicated that he observed that inmate refusing to go to the dining hall. Mr. Kesling urges that it defies common sense to believe that Lieutenant Bailey could observe incidents "which occurred at other locations at the same time" and that Lieutenant Bailey necessarily lied in these memoranda. The DHO rejected this argument and found that the observations of the reporting staff member were credible. Indeed, in the context of a food strike in which the majority of inmates participated, it is not surprising that virtually identical memoranda would be written about various inmates and it is not surprising that Lieutenant Bailey would observe numerous inmates refusing to go to the dining hall at the same time. And to the extent he indicates that he observed other inmates in other housing units, the memoranda indicate that such observations occurred "at approximately 6pm," which is also possible. Mr. Kesling, then, has not shown that

---

[3] The government contends that the court need not reach the merits of Mr. Kesling's claim because he has failed to exhaust his administrative remedies. The government further contends that exhaustion is no longer available to Mr. Kesling because he cannot demonstrate that he filed a timely appeal with the Central Office. The court declines to address that issue and proceeds directly to the merits of Mr. Kesling's claim. *See* 28 U.S.C. § 2254(b)(2) (application for writ of habeas corpus may be denied on the merits notwithstanding the failure of the applicant to exhaust remedies); *United States v. Eccleston*, 521 F.3d 1249, 1253 (10th Cir. 2008) (resolving § 2241 claim on the merits without reviewing the exhaustion question); *Montez v. McKinna*, 208 F.3d 862, 866 (10th Cir. 2000) (following § 2254(b)(2) in § 2241 proceeding).

the memorandum is demonstrably false or that the DHO erred in relying on it.  Because there is "some evidence" to support the disciplinary conviction, this argument is rejected.  *See Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 457 (1985) (in the prison discipline context, due process requires only that "some evidence" support a disciplinary conviction; even "meager" evidence will suffice).

The court also rejects Mr. Kesling's argument that his due process rights were violated by the DHO's failure to review video footage of the dining hall.  To begin, Mr. Kesling concedes that he never asked the DHO to review video footage of the dining hall and that he never asked prison officials to produce video footage of the dining hall.  In the absence of any evidence that Mr. Kesling sought and was denied permission to present video evidence, no due process violation occurred.  *See Howard v. United States Bureau of Prisons*, 487 F.3d 808, 814-15 (10th Cir. 2007) (due process implicated where DHO refuses to review videotape evidence despite petitioner's request).  In any event, even assuming that video footage exists showing Mr. Kesling in the dining hall as he alleges, that evidence would not undermine the DHO's decision.  The video Mr. Kesling describes would allegedly depict him in the dining hall but not eating.  That footage would only have reinforced the DHO's finding that Mr. Kesling participated in the food strike.

Finally, Mr. Kesling complains that his due process rights were violated because the BOP failed to provide a copy of the incident report to him within 24 hours of the incident.  The violation of a prison regulation does not raise a due process violation under *Wolff v. McDonnell*, 418 U.S. 539 (1974).  *See Brown v. Rios*, 196 Fed. Appx. 681, 683 (10th Cir. 2006) (complaint that prison officials violated BOP regulations by failing to serve a copy of the incident report

4

within 24 hours did not raise a due process violation).  In any event, the record suggests, at the very most, that a minor violation of the regulation occurred.  The pertinent regulation states that an inmate "will *ordinarily* receive the incident report within 24 hours of staff becoming aware of [the inmate's] involvement."  28 C.F.R. § 541.5(a) (emphasis added).  The regulation, then, does not mandate a strict 24-hour timeframe in which BOP officials are required to provide an inmate with a copy of an incident report.  In this case, the record indicates that Mr. Kesling received the incident report at 7:46pm on June 22, 2014 and that the BOP became aware of Mr. Kesling's involvement sometime between 4pm and 6pm on June 21, 2014.  To the extent a minor violation occurred, it does not rise to the level of a constitutional violation under *Wolff*.  *See Brown*, 196 Fed. Appx. at 683.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Kesling's petition for relief under 28 U.S.C. § 2241 is dismissed in part and denied in part.

**IT IS SO ORDERED.**

Dated this 10th day of May, 2016, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge
